UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


MICHAEL A. TORRES                    :
                                     :        PRISONER
        v.                           :        CASE NO. 3:16cv925 (MPS)
                                     :
WARDEN MALDONADO                     :

_____

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Michael Torres, is currently confined at Osborn Correctional Institution.

In this habeas corpus action filed pursuant to 28 U.S.C. § 2254, the petitioner challenges his

2004 conviction for sexual assault in the first degree and risk of injury to a minor.

**I.      Procedural Background**

Following a jury trial in July 2004, the petitioner was convicted of sexual assault in the

first degree and risk of injury to a minor.  He was sentenced to a thirty-year term of

imprisonment, execution suspended after twenty-one years.  Pet., Doc. No. 1, at 2.

On direct appeal, the petitioner argued that he was denied a fair trial because the court

improperly instructed the jury regarding the penetration element of sexual assault in the first

degree and the date of the offense.  The Connecticut Appellate Court affirmed the conviction and

the Connecticut Supreme Court denied certification to appeal.  *State v. Michael T.*, 97 Conn.

App. 478, 905 A.2d 670, *cert. denied*, 280 Conn. 927, 909 A.2d 524 (2006).

In January 2005, the petitioner filed a state habeas action on the ground that trial counsel

was ineffective and he was actually innocent of the charge.  He included six examples of

ineffective assistance, alleging that trial counsel failed to (1) present an expert in the pretrial

stage of the case regarding the petitioner's propensity, or lack of propensity, to engage in sexual abuse of a child; (2) present an expert at trial on the issue of the reliability of the victim's disclosure; (3) present an expert at the pretrial stage concerning the disease trichomonas; (4) present an expert at trial concerning the disease trichomonas; (5) adequately investigate the case; and (6) engage in effective pretrial discovery. *Torres v. Warden*, No. CV05-4000278-S, 2008 WL 2426600, at *10 (Conn. Super. Ct. May 28, 2008). The habeas court found that trial counsel was ineffective in failing to present expert testimony on issues of the reliability of the victim's disclosures and the disease trichomonas. *Id.* at *13.

The respondent appealed. The petitioner did not file a cross-appeal regarding the other four examples of ineffective assistance on which his petition was denied. The Connecticut Appellate Court affirmed the judgment of the habeas court regarding trial counsel's failure to present an expert to rebut the state's inculpatory medical evidence. *Michael T. v. Commissioner of Correction*, 122 Conn. App. 416, 417-18, 999 A.2d 818, 819 (2010). The Connecticut Supreme Court reversed on the issue of expert testimony regarding trichomonas and remanded the case to the Appellate Court to consider the issue of expert testimony on the suggestibility of the victim and the reliability of her recollections. *Michael T. v. Commissioner of Correction*, 307 Conn. 84, 103-04, 52 A.3d 655, 667 (2012). On remand, the Connecticut Appellate Court held that trial counsel's failure to present expert testimony on the reliability of the victim's disclosures constituted ineffective assistance. *Michael T. v. Commissioner of Correction*, 144 Conn. App. 45, 47, 71 A.3d 660, 662 (2013). Again, the Connecticut Supreme Court reversed. *Michael T. v. Commissioner of Correction*, 319 Conn. 623, 624-26, 126 A.3d 558, 559-60 (2015).

## II.    The Federal Petition

The petitioner challenges his conviction on four grounds.  In the first two grounds, the petitioner asserted claims of improper jury instructions.  He argued that the trial judge erred when he explained the penetration element of the crime sexual assault in the first degree and in charging the jury regarding the date of the offense.  In the third ground, the petitioner asserted the same six examples of ineffective assistance of trial counsel asserted in his state habeas petition.  In the fourth ground, the petitioner argued that the Connecticut Supreme Court relied on factual inaccuracies in its opinion.

The respondent filed a motion to dismiss the petition because the petitioner did not exhaust his state court remedies with regard to all grounds for relief.  In response, the petitioner stated that he wishes to proceed only on the exhausted claims, specifically, his claims for denial of a fair trial because the trial court improperly instructed the jury regarding the penetration element of sexual assault in the first degree and the date of the offense, and his claim for ineffective assistance of counsel based on trial counsel's failure to present expert testimony on the issue of the reliability of the victim's disclosures and on the disease trichomonas.  The Court then denied the motion to dismiss and directed the respondent to address the merits of the petitioner's claims.

## III.    Factual Background

The Connecticut Appellate Court determined that, based on the evidence presented at trial, the jury reasonably could have found the following facts.

> At the time of the underlying crime, the victim was four years old and lived with her mother, her older brothers and the [petitioner]. On May 14, 2002, the victim's mother gave birth to the [petitioner's] son. At the end of May, 2002, the victim complained to her mother that her "butt" hurt. Because the child's vagina was

irritated and red, her mother took the victim to a pediatric clinic where she was a known patient. Elaine Ingram, a public health nurse at the clinic, noticed a brown, green, yellow, foul smelling stain in the victim's underwear. A wet mount culture of the child's vaginal area tested positive for trichomonas, a sexually transmitted disease. Trichomonas is a protozoa that lives in the urinary tract or prostate of males and in the vagina or urinary tract of females.

Ingram suspected that the victim had been sexually abused and therefore reported the incident to the department of children and families (department). Cynthia Pfeifer, an investigative social worker with the department, was assigned to the case. According to Pfeifer, the victim told her that no one had ever touched her private parts. Pfeifer requested that everyone in the family be tested for trichomonas. The victim's mother tested positive for the disease, but the other members of the victim's family did not. In June, 2002, the [petitioner] left the victim's household. Pfeifer telephoned the [petitioner] and asked that he come to see her on July 29, 2002. When she saw the [petitioner], Pfeifer arranged for him to be tested for trichomonas, but he did not keep the appointment. In August, 2002, Tawanda Ebron, a treatment worker with the department, was assigned to the case. She repeatedly attempted to contact the [petitioner] by leaving telephone messages for him, but she never talked with him.

When the victim was in kindergarten, her mother gave permission for the child to attend a "good touch-bad touch" presentation. A day or two after the presentation, the victim's mother discussed the presentation with the child, who revealed that the [petitioner] had touched her. The victim cried when she told her mother what the [petitioner] had done to her. According to the victim, the incident happened in her mother's bedroom while the mother was at a store. At trial, the victim testified that the [petitioner] "put his thing in my privates." She demonstrated to the jury with anatomically correct dolls what had transpired between her and the [petitioner], including the removal of certain garments. The victim told the jury that because the [petitioner] did that to her, she had to go to a doctor. The victim acknowledged that at school, she had learned about good touching and bad touching and feeling safe and not feeling safe. According to the victim, what the [petitioner] had done to her was a bad touch. On cross-examination, the victim responded affirmatively when defense counsel asked her if the [petitioner's] "thing" went inside her body.

Janet Murphy, a pediatric nurse practitioner, is affiliated with the child sexual abuse evaluation program at Yale-New Haven Hospital. She examined the victim in 2002. Murphy's physical examination of the victim's genital area was normal, and the victim said "no" when asked if anything had happened to her. Murphy explained that, typically, a child of the victim's age cannot explain to a professional how the sexual abuse occurred. Furthermore, it is not uncommon for the results of the examination of the genitalia to be normal, even for children who

are able to provide specific information about things having been put inside different parts of their bodies. The state placed into evidence two exhibits depicting a generic sketch of the female genitalia, which Murphy explained to the jury. With the aid of the exhibits, Murphy testified as to how the genital area of a young girl may be penetrated without affecting or touching the hymen.

Lisa Melillo-Bush, a school psychologist and forensic interviewer, testified about children's delayed disclosure of sexual abuse. According to Melillo-Bush, a four year old is not expected to have knowledge of sexual activity, and a child would not know that she had been abused until she learned what abuse was. Melillo-Bush also testified that conceptually, children have difficulty relating time and space.

The [petitioner], who was thirty years old at the time of trial, was the only defense witness. He testified that he did not put his penis in the victim's vagina or ever attempt to do so. He also testified that he never put the victim in the position she demonstrated with the anatomically correct dolls and that he did not sexually abuse her.

*State v. Michael T.*, 97 Conn. App. 478, 480–82, 905 A.2d 670, 672–73 (2006) (footnotes omitted).

## IV.     Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *White v. Woodall*, 572 U.S. ___, ___, 134 S. Ct. 1697, 1702 (2014). Second Circuit law that does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Renico v. Lett,* 559 U.S. 766, 778 (2010) (holding that court of appeals erred in relying on its own decision in a federal habeas action); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (absent a Supreme Court case establishing a particular right, federal court inference of right does not warrant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also White*, 134 S. Ct. at 1702 (the unreasonable application of Supreme Court holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice")(internal quotation marks and citation omitted); *Burt v. Titlow*, 571 U.S. ___, ___, 134 S. Ct. 10, 15 (2013) (federal habeas

6

relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness).

When reviewing a habeas petition, the Court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under both subsections of section 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *See Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376 (2015) (federal habeas review is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction though appeal").

**V.      Discussion**

**A.      Jury Instructions**

The petitioner argues that the trial court improperly instructed the jury in two ways. First, the trial court failed to provide the jury sufficient information to understand the term "labia majora" to evaluate properly the penetration element of sexual assault in the first degree. Second, the trial court failed to instruct the jury properly regarding the date of the offense.

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is 'whether the ailing instruction … so infected the entire trial that the resulting conviction violates due process.'" *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973))). The petitioner must show "both that the instruction was ambiguous and that there was '"reasonable likelihood"' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (citations omitted). "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Middleton*, 541 U.S. at 437 (internal quotation marks omitted).

The Court considers the last reasoned state court decision in evaluating a Section 2254 petition. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). The last reasoned decision on the jury instruction claims was issued by the Connecticut Appellate Court on direct appeal.

Although the Connecticut Appellate Court cited only state cases, the law it applied is consistent with the federal standard. The Connecticut Appellate Court reviewed the jury instructions in their entirety and considered whether the petitioner was denied a fair trial. "The

pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law."  *State v. Michael T.*, 97 Conn. App. 478, 483, 905 A.2d 670, 674 (2006) (citation omitted).  Thus, the court's analysis is not contrary to Supreme Court law.  The court next considers whether the analysis is a reasonable application of Supreme Court law.

### 1.    Information to Understand Penetration Element

The petitioner contends that the trial court's instruction on the penetration element of sexual assault in the first degree deprived him of a fair trial because the jury was not provided sufficient information to understand the term labia majora.  He does not challenge the instruction stating that touching the labia majora, as the term is defined by Connecticut courts, constitutes penetration.

In analyzing this claim, the Connecticut Appellate Court noted the following additional facts.

> With respect to sexual assault in the first degree, the court charged the jury, in part: "[General Statutes § 53a-70(a)(2) provides that a] person is guilty of sexual assault in the first degree when such person engages in sexual intercourse . . . with another person, and such other person is under thirteen years of age and the actor is more than two years older than such other person. . . .
>
> "First, the accused must have engaged in sexual intercourse with another person. . . . Sexual intercourse means vaginal intercourse between parties regardless of sex. Its meaning is limited to persons not married to one another. Penetration, however slight, is sufficient to complete vaginal intercourse and does not require the emission of semen. Penetration may be committed by an object manipulated by the actor into the genital opening of the victim's body. For purposes of this statute, the state need not prove penetration of the vagina, but rather penetration of the labia majora. A touching of . . . the labia majora satisfies the penetration requirement of this statute because penetration of the labia majora constitutes penetration of a body."

Both the state and the [petitioner] took exception to the instruction that mere touching of the labia majora is sufficient for penetration pursuant to § 53a-70(a)(2). The court referred counsel to the cases on which it relied. *See State v. Edward B.,* 72 Conn. App. 282, 296, 806 A.2d 64, cert. denied, 262 Conn. 910, 810 A.2d 276 (2002), quoting *State v. Albert,* 252 Conn. 795, 805, 750 A.2d 1037 (2000). The court and both counsel examined those cases as well as *State v. Scott,* 256 Conn. 517, 534, 779 A.2d 702 (2001). Following a discussion of that case law and the evidence presented to the jury, counsel agreed to "keep [the instruction] the way it is," but the [petitioner] requested that his exception be noted.

During deliberations, the jurors sent the court several notes. One of the notes asked, "Does touching of the genital area (not penetrating) constitute for [sic] sexual assault." The court explained that it did not use the term "genital area" with respect to sexual assault in the first degree, but in regard to the charge of risk of injury to a child. Thereafter, the jury asked the court to define again sexual intercourse as it relates to the charge of sexual assault in the first degree. The court repeated the instruction it had given previously. The [petitioner] again objected to the instruction because he was of the opinion that there was no evidence of the type of penetration defined by the court.

During oral argument to the jury, defense counsel strenuously argued that there was no evidence of penetration of the victim's vagina, more specifically, that there was no evidence of injury to the hymen or vagina. The transcript discloses, however, that the victim testified that the [petitioner] "put his thing in my privates," and she demonstrated with anatomically correct dolls what the [petitioner] had done to her. It is undisputed that the victim was infected with trichomonas, a sexually transmitted disease.

During the state's presentation of evidence, Murphy, the nurse practitioner, gave extensive testimony regarding the exterior anatomy of the female genitalia using an overhead projector and two one-dimensional diagrams of the anatomy that were in evidence. Murphy noted that a majority of sexual abuse examinations are normal. She gave reasons why a child, even one who has reported sexual abuse in explicit detail, may have a normal physical examination: (1) a lapse of time has allowed injuries to heal, and (2) the type of touching that occurs and the part of the body touched may not leave evidence of the touching. Murphy testified: "On the bottom, there are a lot of different parts. In the genital area that we're looking at, there are outside parts and inside parts. . . . [T]here is a lot of dimension to the bottom, the important parts. Thinking about if some kind of penetrating trauma occurred, the vaginal area. . . . The hymen is a piece of tissue that is surrounding the vaginal opening here. When we see injury, the hymen is one place where you potentially could see injury. Another place where you could see injury is the posterior forchette, which is this area right here. What this picture doesn't let you

appreciate is the fact that there is depth to reach the hymen; that actually in order to view the hymen, these are there. *The folds of tissue called the labia majora on this diagram pull aside.* They are folds of tissue that cover over the hymen and the urethra. So those parts are underneath that. . . . [I]n getting a sense of the location of these parts, if you had a cup, the top of the cup would be the labia and the bottom of the cup is the hymen. This is much more depth than you typically see. There are variations in depth, but there [is] some sort of depth outside of the labia majora to reach the hymen." (Emphasis added.)

*Id.* at 484–87, 905 A.2d at 674–76 (footnotes omitted).

Before the Connecticut Appellate Court, the petitioner argued that, by failing to define labia majora, the court did not define an element of the crime. The court rejected the argument because the statute at issue did not include the term labia majora. Rather it referred to sexual intercourse. Thus, the element the court needed to define for the jury was sexual intercourse. The Connecticut Appellate Court concluded that the trial court properly defined that term. *Id.* at 487-88, 905 A.2d at 676.

The petitioner's argument here is similar to the argument raised in *Henderson v. Kibbe*, 431 U.S. 145 (1977). In that case, the petitioner challenged the trial court's failure to define element of causation in connection with the crime of second-degree murder.[1] The Supreme Court noted that the petitioner's burden of proof was "especially heavy because no erroneous instruction was given." *Id.* at 155. Rather, the petitioner faulted the trial court for failing to do more to explain the causation element than reading the statutory language. The Court noted that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155. To analyze the claim, the court must evaluate the significance of the

---

[1] The statute provided that a person would be guilty of murder in the second degree, if "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which created a grave risk of death to another person, and thereby causes the death of another person." *Kibbe,* 431 U.S. at 148 (internal quotation marks omitted).

omission of further explanation by comparing the instruction as given with the instruction that the petitioner would have preferred.  *Id.* at 156.

In accordance with prior cases, the trial court instructed the jury that "sexual intercourse means vaginal intercourse," that "[p]enetration, however slight, is sufficient," and "penetration of the labia majora constitutes penetration of a body."  *Michael T.*, 97 Conn. App. at 484, 905 A.2d at 674.  The petitioner does not challenge the instruction itself.  The Connecticut Appellate Court noted that the state had presented extensive testimony from a nurse describing the anatomy of female genitalia, including the labia majora, utilizing exhibits. There is no suggestion in the record that that testimony was unclear, disputed, or inaccurate.  The court, therefore, concluded that the instruction was correct with regard to the law and the issues at trial and that it was not reasonably possible that the jury was misled regarding the definition of sexual intercourse.  *Id.* at 488, 905 A.2d at 676.

The Connecticut Appellate Court evaluated the significance of the omission of further definition in light of the evidence presented to the jury.  As a detailed anatomical description was presented to the jury, the Connecticut Appellate Court concluded that the jury could not have been misled in understanding the definition of sexual intercourse.  Upon review, this Court concludes that the Connecticut Appellate Court reasonably applied the applicable Supreme Court law when considering this claim.  Accordingly, the petition for writ of habeas corpus is denied as to the first challenge to the jury instructions.

## 2. Date of Offense

In his second challenge to the jury instructions, the petitioner contends that the trial court improperly charged the jury regarding the date of the offense.  Specifically, the petitioner

objected to the court's use of the terms "complaint" and "statute of limitations" without defining

them.  The Connecticut Appellate Court set forth the following additional facts.

> In relevant part, the court charged the jury as follows: "[I]n the information, the
> state has alleged that the [petitioner] committed these crimes at a certain time. It is
> not essential to this criminal prosecution that a crime be proved to have been
> committed at the precise time alleged in the information. It is sufficient for the
> state to prove the commission of the crime charged at any date prior to the date of
> the complaint or within the statute of limitations and before the complainant was
> thirteen years of age and the [petitioner] was at least two years older than her, as
> that relates to sexual assault in the first degree, and that the complainant had not
> reached sixteen years of age, as that relates to the charge of risk of injury in the
> second count." Defense counsel objected, stating, in part, at the conclusion of the
> charge: "Just the applicable statute of limitations, we would object to that when
> you are dealing with time, in and around."
>
> The state's amended information alleged in relevant part that "at or near the
> months of January, 2002 through May, 2002, at approximately the evening hours .
> . . the [petitioner] engaged in sexual intercourse with another person and such
> other person was under thirteen (13) years of age and the actor was more than two
> (2) years older than such person. . . ." As the [petitioner] points out in his brief,
> the state is not required to allege the particular moment in time that an offense
> occurred when the best information available to the state is imprecise.

*Id.* at 488–89, 905 A.2d at 677.

Upon reviewing this claim, the Connecticut Appellate Court noted that the petitioner had

agreed that time was not an element of the offense and that the information (i.e., the charging

document) was proper.  The court determined that the contested issue was whether the petitioner

had sexual intercourse with the victim, not the timing of such an event.  The petitioner testified

that he never put his penis into the victim's vagina, and the victim testified otherwise.  As the

statute of limitations and date of the complaint did not affect the jury's consideration of this

issue, the Connecticut Appellate Court concluded that any lack of definition did not mislead the

jury.  *Id.* at 489–90, 905 A.2d at 677.

Again, the petitioner does not argue that the instruction was deficient regarding any element of the offense. Rather, he contends that the trial court should have provided further definition of the terms "complaint" and "statute of limitations." The trial court specifically instructed the jury that it need not determine that the crime occurred on any specific date. Although the trial court referenced the statute of limitations, that was not an issue.[2] The Connecticut Appellate Court correctly identified the contested issue as whether the petitioner had sexual intercourse with the victim. As the failure to define the terms complaint and statute of limitations was irrelevant to the contested issue, the Connecticut Appellate Court reasonably concluded that the purported error did not mislead the jury with regard to their consideration of any element of the crime. As the Connecticut Appellate Court reasonably applied Supreme Court law in reaching its decision, this petition for writ of habeas corpus is denied as to the second challenged jury instruction.

**B. Ineffective Assistance of Counsel**

The petitioner next argues that trial counsel rendered ineffective assistance in two ways. First, trial counsel failed to call a medical expert to testify regarding the ways trichomonas is transmitted. Second, trial counsel failed to call an expert to testify about the reliability of the victim's statements.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, the petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by

---

[2] The Court notes that the information alleged that the crime occurred in the first half of 2002 and the trial was held in 2004. Thus, if the jury found that the crime had occurred, it would necessarily have been within the five-year limitations period set forth in Connecticut General Statutes § 54-193(b).

prevailing professional norms and, second, that the deficient performance caused prejudice to him. *Id.* at 687-88. Counsel is presumed to be competent. The petitioner bears the burden of demonstrating unconstitutional representation. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. *Strickland*, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. When reviewing ineffective assistance of counsel claims, federal review "must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods*, 135 S. Ct. at 1376 (internal quotation marks and citation omitted).

Again, the Court considers the last reasoned state court decision in evaluating a section 2254 petition. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the last reasoned decisions on the ineffective assistance of counsel claims were issued by the Connecticut Supreme Court. In both decisions, the state court applied the *Strickland* standard. As the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1). Accordingly, this Court must determine whether the state court decisions were a reasonable application of *Strickland*.

The question this Court must answer "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did" and "measure[s]" the state-court decision against Supreme Court "precedents as of 'the time the state court rendered its decision.'" *Pinholster,* 562 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Connecticut Supreme Court recounted additional facts relating to the use of experts at trial and testimony presented at the habeas hearing:

> At the criminal trial, the state presented expert witnesses on two subjects, trichomonas and the reliability of children's statements. Four expert witnesses who were questioned about trichomonas testified that it was a condition that was sexually transmitted. To explain the delay in the child's reporting that someone had touched her inappropriately, an expert witness who was a school psychologist and forensic interviewer testified that, because a four year old child could not be expected to have knowledge of sexual activity, she would not know that she had been abused until she learned what abuse was.... Trial counsel challenged this expert testimony only by cross-examination of the state's witnesses.

> The petitioner was the only defense witness to testify at his trial. He denied having sexually abused the child. Defense counsel, in his closing argument to the jury, argued for acquittal either because trichomonas could be transmitted nonsexually or because the state had not proven penetration. The jury found the petitioner guilty of sexual assault in the first degree and risk of injury to a child.

16

The opinion of the Appellate Court sets forth the following additional facts and procedural history relevant to the habeas trial. The principal witness at the habeas hearing was Suzanne M. Sgroi, a physician who is an adjunct professor at St. Joseph College in West Hartford, the director of the St. Joseph College Institute for Child Sexual Abuse Intervention for the treatment of child sexual abuse and the executive director of New England Clinical Associates, an organization that works with child abuse trauma.... Sgroi testified that the child had had urinary-vaginal symptomology at least eight months prior to being diagnosed with trichomonas. Contrary to the state's expert testimony at trial linking trichomonas to sexual abuse, she stated that a child could have contracted such an infection by living in the same home with somebody who had the infection, who wasn't all that careful about hygiene, perhaps because of not being careful about laundering towels or having community towels in the bathroom, perhaps because of washing the child in bath water already used by adults and the like. She further testified that guidelines published by the American Academy of Pediatrics do not include trichomonas as a disease that is diagnostic of sexual abuse. . . .

In addition to relying on Sgroi's testimony, the habeas court also found persuasive the testimony of attorney Michael Blanchard about the use of expert witnesses to assist the defense in a criminal trial. Blanchard testified that the proper preparation for a criminal trial involving charges of sexually assaulting a minor, in particular when the defendant denies the charges and will proceed to trial, necessitates the utilization of an expert witness both for trial preparation and during the trial itself. In his view, such required evidence was exemplified by Sgroi's testimony describing nonsexual modes of transmitting trichomonas and challenging the manner in which the child had been interviewed[.]

*Michael T. v. Commissioner of Correction*, 307 Conn. 84, 88–90, 52 A.3d 655, 659–60 (2012)

(footnote omitted) (internal quotation marks and citations omitted).

### 1.      Failure to Call Expert re Transmission of Trichomonas

The Connecticut Supreme Court concluded that the petitioner was not prejudiced by the failure of trial counsel to call an expert witness to discuss the transmission of trichomonas. At the time the Connecticut Supreme Court issued the decision, trial counsel was deceased. Thus, the court could not ascertain his precise reasoning. However, the court concluded that there was not a reasonable probability that the result would have been different if trial counsel had presented expert testimony. 307 Conn. at 102, 52 A.3d at 667. The court noted that the purpose

of presenting expert testimony would be to establish that trichomonas could be transmitted through nonsexual means and, perhaps, to offer examples of nonsexual transmission. Trial counsel did that through his cross-examination of the state's expert. In addition, trial counsel argued the same points in closing argument. Indeed, the state conceded the possibility of nonsexual transmission in closing argument. The Connecticut Supreme Court acknowledged that a defense expert might have further reinforced these points, but noted that the attorney who testified on behalf of the petitioner at the habeas hearing conceded that all relevant points had been covered during cross-examination. *Id.*, 52 A.3d at 667. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) ("In many instances cross-examination will be sufficient to expose defects in an expert's presentation."). More specifically, as the Connecticut Supreme Court noted, the petitioner's medical expert at the state habeas trial agreed that "trichomonas is primarily sexually transmitted," (ECF No. 18-7 at 44), and that one of the State's experts had acknowledged on cross-examination that CDC Guidelines indicated that it could also be non-sexually transmitted. This case is thus distinguishable from *Gersten v. Senkowski*, 426 F.3d 588 (2d Cir. 2005)—on which the dissenting Connecticut Supreme Court justice relied in this case, *see Michael T.*, 307 Conn. at 107—where the failure to consult with a medical expert meant that defense counsel missed a readily available opportunity to rebut the physical evidence of child sexual abuse offered by the State. There, defense counsel's failure meant that the defendant had to concede, in essence, that the victim had been sexually penetrated. *See Gersten*, 426 F.3d at 609. In this case, by contrast, that was not so, as the medical testimony by the State's experts left open the possibility that she was not; further, the same evidence that the missing expert would have supplied—as shown by her testimony in the habeas trial—was already before the jury, namely,

that trichomonas "is primarily sexually transmitted," but that it can also be non-sexually transmitted, as CDC Guidelines recognize. In light of this, it was not an unreasonable application of the *Strickland* prejudice prong for the Connecticut Supreme Court to conclude that the greater depth in which a defense expert might have offered this evidence and possibility that the defense expert possessed more impressive credentials or experience than the State's experts were insufficient to raise a "reasonable probability," i.e., "a probability sufficient to undermine confidence in the outcome," that, "but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In light of the fact that trial counsel elicited all of the points he wanted to make through cross-examination of the state's expert and the petitioner's failure to point to of any significantly different evidence that could have been introduced through a defense expert, the Connecticut Supreme Court's conclusion that trial counsel was not ineffective in failing to present expert testimony as to trichomonas was a reasonable application of Supreme Court law. As this Court concludes that the Connecticut Supreme Court reasonably applied Supreme Court law in determining that trial counsel was not ineffective on the prejudice prong of the *Strickland* standard, the Court need not address the performance prong of the standard. The petition for writ of habeas corpus is denied on this ground.

### 2. Failure to Call Expert re Reliability of Victim's Testimony

In his last claim, the petitioner argues that trial counsel was ineffective for failing to call an expert about the suggestibility of young children and the reliability of their recollections. The Connecticut Supreme Court resolved the matter under the performance prong of the *Strickland* standard.

The Connecticut Supreme Court recounted additional facts relating to the use of

experts at the criminal trial.

> At that trial, the state called Lisa Melillo–Bush, a school psychologist and
> forensic interviewer, as an expert to testify regarding delayed disclosures of
> sexual abuse by children. On cross-examination, the petitioner's trial counsel
> asked Melillo–Bush whether she was familiar with the "McMartin case," a case in
> which the mishandling of an investigation into allegations of a preschool teacher's
> alleged sexual abuse of students caused numerous children to fabricate their
> allegations….The senior assistant state's attorney (prosecutor) objected, and,
> outside the presence of the jury, the petitioner's counsel explained that he was
> attempting to ask Melillo–Bush "about a situation where kids can feed off hysteria
> or suggestion...." The prosecutor responded that, "[i]f we go down that road, I'm
> going to ask that the [video recording of E's second forensic interview] be
> introduced [as a prior consistent statement]. [Counsel] is making the claim that
> children are susceptible to suggestion...." At that point, the petitioner's counsel
> stated that he would no longer pursue that line of questioning.

*Michael T. v. Commissioner of Correction*, 319 Conn. 623, 634–35, 126 A.3d 558, 565 (2015)

(footnote omitted).  In light of these facts, the Connecticut Supreme Court explained that the

issue

> is not merely whether reasonable counsel could have concluded that the second
> forensic interview, on balance, was more damaging than helpful to the defense.
> Instead, the question is whether reasonable counsel could have concluded that the
> benefit of presenting expert opinion regarding the reliability of E's delayed
> disclosure of abuse was outweighed by any damaging effect of the video-recorded
> interview in light of other means to impeach that disclosure.

*Id.* at 634, 126 A.3d at 564–65.

The court noted that trial counsel's goal was to raise questions for the jury about the

victim's credibility.  Thus, the court found that the decision not to call an expert and thereby

prevent introduction of the victim's prior consistent statement was a strategic decision.

Introducing a recorded statement of the same events given a year before the trial would have

bolstered the victim's credibility, especially because the recorded statement provided additional,

specific details that would have given texture to the victim's account and cast the petitioner in a

bad light. *Id.* at 636–37 (victim disclosed in video statement that petitioner had told her to "shut up" and called her a "bitch," and also stated that she had been wearing her 'Christmas clothes' that her 'Nana' had given her when the petitioner sexually abused her). In addition, the recorded statement included statements that the petitioner had threatened the victim if she disclosed the abuse, thereby providing support for the delay in reporting. *Id.* at 635–36, 126 A.3d at 565–66. Thus, in cross-examining the state's expert, trial counsel deliberately stopped short of the point at which the State would argue that he had "opened the door" to admission of the video statement. (*See* ECF No. 18-2 at 47–51.)[3]

The Connecticut Supreme Court determined that trial counsel's decision was an exercise of trial strategy and did not constitute deficient performance.[4] 319 Conn. at 636 ("Preventing the jury from watching the video recording of E's prior consistent statement constitutes a reasonable strategic basis for declining to call an expert witness like Sgroi because it would have been damaging to the petitioner's defense."). The conclusion that the decision was strategic is

_____

[3] As the Connecticut Supreme Court noted, this tactic, as well as the arguments made by both sides in the state habeas proceedings, appears to have been based on the assumptions that "the video recording of the second forensic interview . . . would have been admissible as a prior consistent statement," and that "any expert opinion evidence that served to impeach the reliability of [the victim's] disclosure would have provided a basis to admit the video recording, whereas elicitation of comparable evidence through cross-examination of the state's witnesses would not have provided a basis for its admission." *Michael T.*, 319 Conn. at 633. The Connecticut Supreme Court noted that the petitioner made no challenge to these assumptions in the habeas appeal before it. *Id.* That may have been because the parties apparently made similar assumptions during the trial. The record reflects that while the State did not object to some cross-examination of its expert by defense counsel concerning her opinions about a child's delayed disclosure of sexual abuse, questioning that more directly and explicitly challenged the credibility of the victim in this case (for example, by asking the expert about the susceptibility of children the age of the victim to being influenced to please adults during investigative interviews) would have prompted it to seek to introduce the video as a prior consistent statement; the record also reflects that the petitioner's trial counsel reacted to the State's position by eschewing any lines of questioning that would have led the State to seek to admit the video. *See* ECF No. 18-2 at 47–51. This back and forth between the prosecutor and the petitioner's trial counsel provides support for the Connecticut Supreme Court's finding that the failure to call an expert that more directly raised doubts about the victim's credibility was a strategic choice motivated by defense counsel's desire to avoid introduction of the video.

[4] In reaching this decision, the court also noted that much of the information the petitioner's expert relied upon in testifying at the habeas hearing was not in evidence at trial, and her testimony challenging the credibility of the

21

supported by the record (*see* note 3, *supra*), and the damaging nature of the recorded statement suggests that it was a reasonable strategic choice. In any event, this Court concludes that the Connecticut Supreme Court's decision rejecting the petitioner's claim was a reasonable application of the *Strickland* standard. *Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."). As this Court agrees that the state court reasonably decided the claim under the performance prong of the standard, it need not address the prejudice prong. The petition for writ of habeas corpus is denied on this ground.

## VI.     Conclusion

The petition for writ of habeas corpus [**Doc. No. 1**] is **DENIED**. Any appeal of this order would not be taken in good faith. Thus, a certificate of appealability will not issue.

The Clerk is directed to enter judgment in favor of the respondent and close this case.

**SO ORDERED** this 14 day of November 2017, at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge

victim was vulnerable to attack on other grounds. *Id.* at 637–38, 126 A.3d at 567.

22